\* MANNING & a. v. COGAN & a.

Where a debtor is arrested in one county in this state, and gives his bond, with the condition to take the poor debtor's oath in one year, or to surrender himself to the creditor; the taking of the oath before a tribunal in another county, is not a legal performance of the condition of the bond.

The act of the legislature of June session, 1864, was intended to secure an impartial tribunal to the interested parties, but not to change the rule of practice on this subject.

Under an agreed state of facts, submitted to the court by the counsel in a case, the court will presume such facts to be true, and competent evidence in the case, for them to weigh, and, to determine the legal questions and inferences springing out of them.

The court will determine, whether the language or conduct of a party, or his counsel, amounts to a waiver or estoppel, as matter of law, when the facts agreed to by the counsel justify such a decision, or otherwise.

The doctrine of waiver and estoppel considered.

THIS was an agreed case, in an action of debt brought by Francis C. Manning, Eben C. Stanwood, Robert W. Lord, and Frederick Allen, against defendant and his sureties on bond, dated March 29, 1866, to take poor debtor's oath.

For the purposes of this decision, the following facts were agreed upon:

The plaintiffs are residents of Boston, and William Cogan, the debtor, a resident of New York, but formerly of Sandwich, N. H.

---

\* The first opinion in this case was delivered June term, 1868, and the verdict December, 1868. Neither was furnished to my predecessor. This summary of both opinions, was furnished me, November 27, 1871.

REPORTER.

The judgment on which the arrest was made, was recovered in Belknap county, and the arrest was made in that county, E. A. Hibbard of Laconia, being attorney for the plaintiffs, and Ira A. Eastman of Concord, for the defendants. The proceedings in taking the oath, were duly filed in the clerk's office of Belknap county, a copy of which is to make a part of this case. It is further agreed, provided the evidence would be competent upon the trial, that prior to the application to Judge Bellows for the appointment of said justices, Mr. Eastman wrote to Mr. Hibbard in regard to the time and place of the hearing, and the justices to be appointed, and named Judge Fowler and Mr. Stevens as suitable men, and Concord as the most convenient place. He requested Mr. Hibbard to waive the fifteen days' notice, and suggested a time that he thought might accommodate them both. Mr. Hibbard replied, saying that he found no fault with Fowler and Stevens as the magistrates, but thought that it might be more convenient to him to have the hearing at Laconia, and named N. B. Gale of that place as a justice. In this letter, Mr. Hibbard stated, that for the present, he did not like to waive any rights. The defendants offered to prove, if the court shall consider it competent for any purpose, that on the day that the application was made to Judge Bellows, the contents of Mr. Hibbard's letter were made known to him, and the residences of the plaintiffs and the debtor were, upon his inquiry, stated to him. He, thereupon, sent a telegram to Mr. Hibbard, inquiring if he had any objections to the appointment of said Fowler and Stevens, as such justices, and no reply being received, he appointed them.

The plaintiffs also offer to prove, if the court shall consider them competent for any purpose, the following matters :

That Mr. Hibbard, after receiving the telegram, had not time to answer it before the appointment was made. That neither of the plaintiffs, nor any person residing out of this state on their behalf, at any time intended to attend the hearing, wherever it might be, nor did Mr. Hibbard expect either of them to attend, or consult them in regard to it, or notify them of it, until after the time expired. That Judge Bellows, in making said appointment, did not consider any question relating to the place of hearing, and did not inquire or know where the arrest was made. That, on the day of the hearing, Mr. Hibbard's engagements were such that he could not attend, and it was then impossible for him to instruct other counsel in season for the hearing ; that he wrote on a slip of paper, under seal, an extension of the time for taking the oath ten days, signed by himself as attorney for the plaintiffs, and procured Mr. Mugridge to call privately on Mr. Eastman, and if he would consent to a postponement of the hearing, to affix the slip of paper to the bond in suit, and appear before the magistrates and arrange for the postponement. Mr. Eastman said, that he should be glad to accommodate Mr. Hibbard, but he thought that Mr. Hibbard had not the power to extend the bond, and that it would not be safe for his client to have the hearing delayed beyond the year, as requested, and, therefore,

declining to consent, and Mr. Mugridge did not appear before the magistrates.

The parties agree that judgment shall be rendered for the plaintiffs, or for the defendants, or the cause stand for trial by the jury, as the court shall order.

It was ordered, that this case be reserved for the consideration of the whole court at the next law term in this district.

The case was amended by annexing thereto copies of the papers following:

"To the Honorable Henry A. Bellows, justice of the supreme judicial court of the state of New Hampshire:

Respectfully represents the undersigned, William Cogan, of the city of New York, in the state of New York, that on the 29th day of March, 1866, he was surrendered into court by his bail upon a suit in favor of Francis C. Manning, Eben C. Stanwood, Robert W. Lord, and Frederick Allen, against said bail, and thereupon gave bond as provided by law, to take the oath for the relief of poor debtors; and that he is desirous of taking said oath.

He, therefore, prays your Honor to appoint two justices of the peace, one of whom shall be of the quorum, to whom he may apply to be admitted to take the oath prescribed in chapter 200 of the Revised Statutes.

March 4, 1867.                                    WILLIAM COGAN.

March 12, 1867.   On considering the within petition, I hereby appoint Hon. Asa Fowler and Lyman D. Stevens, Esquires, both of Concord, N. H., both justices of the peace and quorum, to whom application may be made by the said William Cogan, to be admitted to take said oath.

HENRY A. BELLOWS, *Justice S. J. Court.*

To Asa Fowler and Lyman D. Stevens, Esquires, justices of the peace and of the quorum, throughout the state of New Hampshire:

Respectfully shows William Cogan of the city of New York, in the state of New York, yeoman, that upon a surrender into court by his bail, upon a suit in favor of Francis C. Manning, Eben C. Stanwood, Robert W. Lord, and Frederick Allen, against said bail, he gave bond on the 29th day of March, A. D. 1866, as provided by law, to take the oath for the relief of poor debtors; that he had not at the time of his original arrest in the suit in which he gave said bail, nor at any time afterwards, estate to the value of twenty dollars, excepting goods and chattels by law exempted from attachment. That he had made application to the Hon. Henry A. Bellows, justice of the supreme judicial court, for the appointment of two justices, one of whom should be of the quorum, to whom he might apply to be admitted to take said oath, and His Honor has appointed you as said justices.

He therefore prays, to be admitted to take the oath prescribed by chapter 200 of the Revised Statutes.

WILLIAM COGAN.

Dated at Concord, March 12, 1867.

Upon the application aforesaid, it is ordered that the said William Cogan give notice to the said Francis C. Manning, Eben C. Stanwood, Robert W. Lord, and Frederick Allen, to appear at the office of Asa Fowler in Concord, in the county of Merrimack, on the twenty-eighth day of March, in the year one thousand eight hundred and sixty-seven, at eleven o'clock in the forenoon, to show cause, if any they have, why the said William Cogan should not be admitted to take the said oath, by giving to the said Francis C. Manning, Eben C. Stanwood, Robert W. Lord, and Frederick Allen, or to their attorney, or leaving at their usual place of abode, or at the usual place of abode of their attorney, a copy of said application, with a copy of this order thereon, at least fifteen days previous to the said twenty-eighth day of March.

ASA FOWLER,    }  *Justices of the peace and of the*<br>
L. D. STEVENS,  }  *quorum throughout the state.*

Dated March 12, 1867.

I certify that on the twelfth day of March, 1867, I gave to E. A. Hibbard, Esq., the attorney of the within named Francis C. Manning, Eben C. Stanwood, Robert W. Lord, and Frederick Allen, a copy of the within petition and order of notice attested by the justices within named.

JOHN H. ALBIN.

MERRIMACK, ss.    March 16, 1867.    Personally appeared the above named John H. Albin, and made oath that the above certificate by him signed is true.

Before me,    IRA A. EASTMAN, *Justice of the peace.*

### THE STATE OF NEW HAMPSHIRE.

MERRIMACK, ss.    On the 28th day of March, A. D. 1867, at the office of Asa Fowler, in Concord, in said county of Merrimack, William Cogan of the city of New York, in the state of New York, heretofore a prisoner at the suit of Francis C. Manning, Eben C. Stanwood, Robert W. Lord, and Frederick Allen, all of Boston, in the state of Massachusetts, took the oath prescribed by law for the relief of poor debtors.    E. A. Hibbard, Esq., the attorney of the said Francis C. Manning, Eben C. Stanwood, Robert W. Lord, and Frederick Allen, having been duly notified, did not attend.

Before us,    ASA FOWLER,    }  *Justices of the peace and of the*<br>
L. D. STEVENS,  }  *quorum throughout the state."*

*Hibbard,* for plaintiffs.

I. The oath administered to the defendant Cogan, is fatally defective in this, that it was taken in Merrimack instead of Belknap county.  *Symonds* v. *Carleton,* 43 N. H. 444.

II. In my first brief, I merely cited *Symonds* v. *Carleton,* 43 N. H. 444, as decisive of this action.  In the defendants' brief it is contended that chap. 2881 P. L. changes the law of that case.

1. *Symonds* v. *Carleton* was nòt decided for the plaintiff *because* a different decision would have entitled the debtor "to proceed in any county in the state." The reasons for the decision, which are equally applicable in this case, are fully stated by the court.

2. Neither in *Hawley* v. *White* nor in *Symonds* v. *Carleton* is any stress laid on the fact that by having the whole state to select from, the debtor might in some instances be better able to select suitable magistrates. Both cases turned on the question, where shall the oath be taken?

3. The defendants assume that by appointing justices residing in Concord, Judge Bellows is to be understood to have decided that the hearing should be there. The objection is not so much, that the justices *resided* in Merrimack county, but that *the hearing was had* there.

4. The object of chap. 2881, P. L. was simply to provide an impartial tribunal. It is preposterous to suppose the legislature intended to throw upon the judge making the appointment, the burden of fixing the county, in which the hearing should be held.

5. The residence of the parties out of this state, is an immaterial fact, "for the law regulating the bringing of transitory actions obviously does not apply," 43 N. H. 446.

III. 1. The court, in deciding this case, say: "We have no reason to suppose that the legislature ever intended, to change the rule as prescribed in the former statutes of this state, and by the two aforesaid decisions of this state so that the poor debtor should have his hearing elsewhere except where he was arrested or gave his bond. It appears to us necessary or fit and proper that some certain place for the hearing should be defined by law and thus known to the parties." "We think it could not be presumed, as among the implied powers or duty of a judge of this court, to appoint justices of the peace with authority to appoint a place of hearing out of the county where the arrest was made, nor would it any more be lawful for such justices or consistent with public policy that they, when appointed, should designate a place of hearing, out of the county where such arrest was made."

2. If it could be possible, that any representations made to the judge at the time of the appointment, could avail the defendants, it certainly was requisite that they should be inserted in the written application, and made a matter of record.

3. The defendants insist, that they have a right to go to the jury on the question of waiver. This question, also, was expressly decided against the defendants, in the opinion delivered at the June term. Not one of the numerous cases cited in the defendants' fourth brief supports the position contended for.

*Ira A. Eastman*, for the defendants.

I. The proceedings in taking the poor debtor's oath in this case were had under the statutes of 1864, pamph. laws, chap. 2881.

1. That statute was passed after the decision of *Symonds* v. *Carleton*, relied upon by the plaintiffs, and changes the law of that case. By that statute, the whole matter is left with one of the justices of the supreme judicial court to appoint whomsoever he shall think best, whether residents of the county where the debtor was arrested or elsewhere.    The parties were all non-residents, and Concord would be a more convenient place than Laconia.

2. This statute is decisive of this case.    The action of the judge in making the appointment is final and conclusive.

II.    1. The first section of the act of 1864 requires the poor debtor to apply to a justice of the supreme judicial court, by petition, praying for the appointment of two justices, to whom he shall apply to take the oath.    The second and third sections provide that the justice of the Supreme judicial court shall thereupon, with or without notice to the creditor, as he may think proper, appoint the justices, to whom the application shall be made, and by whom the oath shall be administered.    *This is the only way in which a poor debtor can be relieved.*

2. We think, that the court must come to the conclusion, that the doings of the justice, are final and conclusive in the matter, and that his appointments cannot be nullified.    It must follow, too, as an inevitable deduction, that if the appointments are valid, the hearing shall be had in the county where the justices reside, and where they have jurisdiction to act.

3. The statute gives the opportunity to the creditor to object to the appointment, if the justice thinks proper ; and if notice is given and no objection is made, all objections are waived.    The act of 1864 places the whole matter entirely in the hands of the justices of the supreme court.

4. Before this application, Mr. Eastman wrote to Mr. Hibbard, named the justices and suggested a time and place that he thought would accommodate them both, if Mr. Hibbard would waive the length of the notice required by the statute.    Mr. Hibbard said that he found no fault with the justices, nor did he intimate any objection to the legality of the place, but thought it might be more convenient to him to have the hearing at Laconia.    His statement that he did not like to waive any rights, applied solely to the *length* of notice.    And we submit that all objections to the appointment of the justices, if any could exist, were waived by the course taken by the creditors.

III.    The cause should stand for trial by the jury.

1. The opinion delivered, assumes as facts, the matters offered to be proved by the plaintiffs, or some of them, which are *not* admitted by the defendants.    These must be *proved*, before they can form the basis of a judgment for the plaintiffs, citing 1 Greenl. on Ev. § 2 ; *Eaton* v. *Welton*, 32 N. H. 252 ; *Tasker* v. *Peaslee*, 36 N. H. 168 ; *Lisbon* v. *Bath*, 23 N. H. 2–9 ; *Warren* v. *Glynn*, 37 N. H. 340 ; *Gilmanton* v. *Ham*, 38 N. H. 108 ; *Robinson* v. *Potter*, 43 N. H. 192 ;    *Gallup* v. *Mulvah*, 26 N. H. 132 ;    *Parish* v. *Gilmanton*, 11 N. H. 293 ; *Gilford's Petition*, 25 N. H. 124 ; *Glidden* v. *Towle*,

31 N. H. 147; *Goodwin* v. *Milton*, 25 N. H. 458; *Drew* v. *Spaulding*, 45 N. H. 472.

2. The concurrence of Mr. Hibbard in the fitness of Messrs. Fowler and Stevens, Justices, the neglect to take any exception to *Concord* as the *place* of hearing. The neglect to make any reply at any time to Judge Bellows, when asked if he had any objections to interpose, the proposition to have the time of the hearing postponed, instead of objecting to the justices and the place of hearing, are all matters, if proved competent to show a waiver.

IV. 1. The court should give us, under the provisions of the case, an opportunity to try the questions of waiver and estoppel before the jury, under the rulings of the court upon the trial.

NESMITH, J. This case was twice argued, and two separate decisions given upon the different points arising therein; we give the substance of both here :

From the facts, as stated by the parties, it appeared that Cogan, the principal obligor, on the bond in suit, having been arrested on execution, was, on the 29th of March, A. D. 1866, surrendered by his bail, into the supreme judicial court, then in session, in and for Belknap county, and being then and there in custody, as prisoner, gave the bond in suit, with sureties, as provided by law, for the relief of poor debtors. Subsequently, said Cogan, on the 4th of March, A. D. 1867, applied to Judge Bellows, at Concord, for the appointment of two justices of the peace, one of whom, to be of the quorum, before whom he might apply, to be admitted to take the aforesaid oath. On the 12th day of March, 1867, Justice Bellows appointed Hon. Asa Fowler and Lyman D. Stevens, then justices of the peace throughout the state, as the tribunal, before which, the said Cogan, might appear and have a hearing. It may be here remarked, that it is a conceded fact in the case, that Justice Bellows has no knowledge, that Cogan had been arrested in Belknap county, and had given his bond there. It appeared, also, that on the same 12th day of March, said Cogan preferred his petition to said trial justices, asking to take the poor debtor's oath, at Concord, on the 28th of the same month; and that an order of notice issued on this application, which was served on E. A. Hibbard, attorney, to the judgement creditors, on the same 12th day of March, and that subsequently on the said 28th of March, said Cogan, at a hearing before said justices, at said Concord, was, by them, duly permitted to take the poor debtor's oath.

It has been decided in this state, that when a poor debtor is arrested in one county, and gives his bond with the condition to take the poor debtor's oath in one year, or surrender himself to the creditor, the taking of the oath in another county, is not a performance of the condition of the bond. *Hawley* v. *White*, 18 N. H. 72; *Symonds* v. *Carleton*, 43 N. H. 444.

---

*Hawley* v. *White*, merely followed a prior decision of the same court, unreported, in a case "involving a similar question," in which the opinion was delivered by Woods, J.                                        REPORTER.

The reasons for these decisions, seem to us, to be supported by sound policy. The poor debtor, in law, is presumed to be the prisoner in the county only, where the original arrest was made. The bond is a temporary and conditional relief. Within the year, a final discharge is to be had, or he is to be surrendered, as the law presumes to the court or creditor, where he was before in custody. The records are no where else, except in the county of the arrest, and generally the convenience of the parties, is attained by a compliance with the rule established by our decisions.

The statute made and passed by the legislature, June session A. D. 1864, Pamphlet Laws, chap. 2881, changed the mode of appointing the trial justices. The obvious intent of this act was to secure greater impartiality in the tribunal having jurisdiction over this class of cases. This object was effected by taking away from the debtor, the choice of the men who were to try him, and by conferring the power of appointment, upon some member of the supreme judicial court, who could have no other motive but to appoint disinterested men as trial justices. There was no other material change by that act, save that but one of the said justices need be " of the *quorum.*" The character and ability of the trial justices in this case, are acknowledged to be altogether trustworthy. But the objection lies to the hearing as had in Merrimack county. The petition of Cogan himself to the justices gives no knowledge of the place of arrest, nor is it to be presumed that said trial justices had such knowledge from any source.

We think the petition should embrace an averment, stating the county where the arrest was made, and then the justices could legally assign the place of trial, in the proper county.

In this instance, the court and trial justices finding Cogan making his several petitions in Merrimack county, might well have presumed his arrest was there. It is not made a question but that the magistrates as appointed, might have had full jurisdiction of this case, provided, they had appointed the place of hearing in Belknap, instead of Merrimack county. *Young* v. *Bride*, 25 N. H 482.

But having assigned the place of hearing in Merrimack county, and having proceeded to execute their official duties there, so far as to discharge the prisoner from his arrest, they exceeded their authority, and their proceedings became a nullity. *State* v. *Fowler*, 28 N. H. 184.

Proceedings of tribunals, which have no jurisdiction of the subject-matter, upon which they assume to act, are absolutely void, and there is no presumption in favor of the jurisdiction of inferior courts, or *persons vested with special powers. Sanborn* v. *Fellows*, 22 N. H. 473 ; *Morse* v. *Presby*, 25 N. H. 299 ; *Goulding* v. *Clark*, 34 N. H. 159.

But it is suggested by the counsel for the defendants, that he was misled by the conduct and declarations of Mr. Hibbard, counsel then and now of the plaintiffs, in consequence of what was done and said by him, both as to the appointment of said magistrates, and as to

the time and place designated for the hearing of Cogan ; consequently, that the plaintiffs have waived their right to object to the proceedings of the trial justices, or that he is estopped from denying them full force and validity.

In settling this question, which is now strenuously urged by the counsel for the defendants, the court must be permitted to take the facts embraced in the case as agreed to by the respective counsel, as true, and as affording the competent evidence proper for the court to weigh, and that the law applicable to these facts, and justly arising therefrom must be regarded as the law of the case.

It is suggested by the defendants' counsel in his argument, that the letter of Mr. Hibbard served to mislead the defendants, or to entrap them, and that as a legal consequence, the plaintiffs, as creditors, have waived their right now to set up their claim upon the bond in suit ; or, in other words, should be estopped now to set it up. The law on this subject is sometimes stated in this language : that when one by his words or conduct causes another to believe in the existence of a certain state of things, and induces him to act on that belief, so as alter his own previous position, the former is concluded from averring against the latter a different state of things, as actually existing at the same time. *Davis* v. *Handy*, 37 N. H. 65 ; *Simons* v. *Steele*, 36 N. H. 73 ; *Odlin* v. *Gove*, 41 N. H. 465.

The proposition is sometimes put in other language, perhaps more intelligible ; a party is not estopped by his acts or declarations, unless the other party has done or omitted something in consequence of them, by which he will be prejudiced, unless they are made good. *Norris* v. *Morrison*, 45 N. H. 499 ; *Austin* v. *Thompson*, 45 N. H. 113 ; *Walker* v. *Richards*, 41 N. H. 391.

Testing the declarations and conduct of plaintiffs' attorney by these rules, it does not occur to us how the defendants' counsel can say they were entrapped or misled, either as to the magistrates, or place or time of the hearing, as proposed in the correspondence which passed between the parties, prior to March 4, 1867, Mr. Hibbard had not distinctly accepted either of the proposed justices, because he proposed to substitute Mr. Gale, instead of one of them. As to the place, he did not accept of the proposition to adopt Concord, but named Laconia as the more convenient place. No objection as to the time of the hearing then. Hibbard made the open and avowed declaration that for the present, *he did not like to waive any rights.*

It appears to us that thus far, the answer of Mr. Hibbard conveyed to the other party reasonable notice, that whatever course you may take as to the tribunal, time or place of hearing, I reserve to myself the right to take such legal advantages, as the law will give me, of any defect in your proceedings. The answer of Mr. Hibbard was so understood, and the other side does not act upon any declaration or conduct of the plaintiffs or their attorney, but applied to the authority assigned by the law, to make certain the magistrates, and of course, it devolved upon the tribunal to fix time and place of hearing, by giving to the opposite party due notice of the place of

hearing, as well as the time, at least fifteen days prior to the time so assigned for the hearing.

Again, we find by the case, that after the time and place for the hearing, was fixed by the trial justices, and that the counsel for plaintiffs, could not be present at the time assigned, on account of other engagements. He thereupon applies to defendants' counsel for a postponement of the hearing, to a later day. This offer, perhaps for good reasons, was rejected by the defendants' counsel.

We do not claim the right to assert, that either counsel was insincere, or not acting in good faith, the one toward the other. We can say, that we do not perceive any legal ground, for the defendants to set up their estoppel against plaintiffs' claim. The defendants could not be presumed ignorant that the arrest of Cogan was made in Belkhap county, and that his bond was executed and filed there. And thus he was deemed in law, a prisoner there, if the conditions of the bond, were enforced in a certain way, and that the statute law upon this subject had twice received a construction from our courts, that the oath to Cogan as a poor debtor, could only be administered in the county, where such arrest was made. That such was the law, the defendants could not be presumed ignorant, and as suggested in the decision of *Odlin* v. *Gove,* the means of knowledge being within the reach of the party, if he failed to use due diligence to ascertain the truth, he can have no cause to complain. The law has distinctly pointed out a beaten path for the debtor, in such cases, to travel in. For the present we see no reason why there should not be

*Judgment for the plaintiffs.*